UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | DEFENDANT MICHAEL ANDREW |
| | ) | SCHLEGEL'S MOTION TO DISMISS THE |
| vs. | ) | INDICTMENT OR FOR A *KASTIGAR* |
| | ) | HEARING |
| Michael Andrew Schlegel, | ) | |
| | ) | |
| Defendant. | ) | Crim. 13-74 (PJS/FLN) |

Defendant Michael Andrew Schlegel, through his counsel, Daniel L. Gerdts, Esq., and Daniel P. Brees, Esq., respectfully requests the Court for an Order dismissing the indictment for the violation of Defendant's Due Process rights under the Fifth Amendment, or in the alternative, for a hearing pursuant to *Kastigar v. United States*.

## BACKGROUND

After a lengthy evidentiary hearing on 14 January 2014, this Court agreed that communications between Defendant Schlegel, CPA Douglas Holm, and the law firm of Robert Bernhoft (at least from late December 2004 and forward) were protected by the attorney-client privilege. The Court directed the Parties to confer on which proposed exhibits and evidence were affected by its ruling. The Court also invited Defendant to submit additional motions for the Court's consideration if

1

the Defense believed that further specific remedies were required.

A brief summary of the facts begins at the end of August 2004, when Defendant Michael Schlegel approached CPA Douglas Holm for assistance in solving his problems with the Internal Revenue Service.  Holm advised Defendant that he needed an attorney to provide advice and guidance in solving the problems.  After meeting with one attorney recommended by Holm in November 2005, Defendant ultimately chose another attorney named Robert Bernhoft.  Holm, Bernhoft, and Schlegel had a telephone conference call on 20 December 2004, in which they discussed the parameters of the project.  Defendant formally retained Bernhoft's firm shortly thereafter.  Bernhoft, in turn, retained Holm on 29 December 2004 to assist him in the representation.  Holm provided Bernhoft's firm with forensic accounting work on Defendant's case from December 2004 through the end of April 2005.

During this time, Defendant was under a civil audit by the IRS, prompted by an earlier audit of the company NatureRich, Inc., in which both Defendant and Codefendant Brad Collin were majority shareholders.  The Revenue Agent conducting the audit, Stephanie Zych, communicated frequently with Holm, regarding both Collin and Defendant.  When Holm hinted that Zych should focus her investigation on Defendant and broaden its scope, she listened, took notes, and groomed Holm to provide as much information as she could squeeze out of him.

On 2 May 2005, for example, Zych called Holm to discuss the possibility of a summons for his papers. She observed in her notes that Holm seemed surprised that she had not summonsed him earlier from the hints he had been dropping. Holm also stated that if he were ever under oath he believed he would have information that would be helpful, but would not say more because he was afraid he already had overstepped his boundaries. Agent Zych issued a summons for Holm's records shortly thereafter. On 10 May 2005, Holm called Zych regarding the summons and told her that it only covered years 2002 and 2003, and that the IRS might be more interested in his notes from 1999 and forward. Defendant's Exhibit 14[1]. Holm provided hints and suggestions to Zych that pertained both to Collin and Defendant.

Among the documents Holm had in his possession was a copy of a letter he had drafted to attorney Ertl of Bernhoft's firm, dated 9 March 2005, in which he identified a series of concerns about "items which the revenue agent will consider to be 'Badges of Fraud' when making a decision to refer or not to refer to CID." Defendant's Exhibit 13. He also had his notes from conversations with Defendant Schlegel, and from conversations with lawyers at Bernhoft's firm, in addition to forensic accounting spreadsheets he had prepared, a draft tax return for 2003, and requests for information. Not surprisingly, nothing in his notes reflects his

---

[1] All references made to Exhibits herein refer to the evidentiary hearing dated 14 January 2014.

contacts or conversations with Revenue Agent Zych or the nature of his cooperation with the IRS in encouraging a fraud investigation of his own client, Defendant Schlegel.

When Defendant learned that the IRS had summoned the materials in Holm's possession, Defendant demanded that Holm return the documents to him, noting that they were protected by the attorney-client privilege.  Defendant's Exhibit 5.  Holm disregarded the request.  Defendants Exhibit 14.  Although Holm testified that he understood that the documents belonged solely to the Bernhoft firm and Defendant, he pointedly noted that he did not return the documents because he has nothing but contempt for "tax protesters" or attorneys representing them.

The information Holm provided to the IRS became the basis for Agent Zych's referral of Defendant's matter to the Criminal Investigation Division [CID] of the IRS.  IRS Agent Zych's notes from 27 October 2005, for example, indicate that the information supplied by Holm provided sufficient evidence to refer the case to the CID:  "Went through box of information provided by Holm's [sic]. Discussed case with Wanda Gorell. She said based on the information we had enough to refer the case!!!!"  Defendants Exhibit 17.  In her Fraud Awareness Lead Sheet, Agent Zych checked the box that there were indications of fraud with the simple explanation, "See letter from Mr. Holm to Mr. Ertl found in section 125-2,"

4

referring to the letter dated 9 March 2005. In an internal memorandum written on 26 October 2006, Agent Zych wrote that "Based on conversations held with [Douglas Holm] regarding this information, we found out that he represented Michael Schlegel and had information we may be interested in. At that time I stopped working on [Collin's] case and concentrated on Schlegel to obtain enough information to refer the case to CI." Defendant's Exhibit 18.

The agents at CID, in turn, had no need to gather any further personal information regarding Defendant before recommending that the Department of Justice obtain an indictment against Defendant and Codefendant Collin:

> Holm is a former IRS District Director. Holm's records were summonsed during the audit and he provided numerous records to the auditor that had been turned over to him by Schlegel and/or Collin. Holm also turned over workpapers he had prepared. Little if any additional individual records related to Schlegel and Collin for 2005 have been obtained.

*See* Special Agent Report (17 November 2010) at 5.

## ARGUMENT

The government violated Michael Schlegel's Fifth Amendment right to Due Process by appropriating privileged information from CPA Douglas Holm, who was retained by an attorney to provide legal counsel to Schlegel. The interference with Schlegel's attorney-client privilege unfairly prejudiced Schlegel because it ultimately resulted in an indictment against him. Because the prejudice cannot be remedied by exclusion of the privileged evidence, dismissal of the indictment is

5

required.  Even if the Court were to disagree that dismissal is required, the Court must conduct a hearing pursuant to *United States v. Kastigar* in which the Government bears the burden to establish that its evidence derives from non-privileged sources.

I. **THE GOVERNMENT VIOLATED DEFENDANT SCHLEGEL'S FIFTH AMENDMENT RIGHT TO DUE PROCESS BY INTERFERING WITH HIS ATTORNEY-CLIENT PRIVILEGED COMMUNICATIONS.**

    A. **The Interference with Defendant Schlegel's Attorney-Client Privilege Constituted Government Misconduct that Violates Due Process.**

Sixth Amendment violations are limited to government action occurring after the initiation of adverse criminal proceedings. A defendant's remedy for misconduct occurring in the pre-indictment stage is provided in the due process protections of the Fifth Amendment. *United States v. Marion*, 404 U.S. 307, 315 (1971). "A Fifth Amendment due process violation may occur when government interference in an attorney-client relationship results in ineffective assistance of counsel or when the government engages in outrageous misconduct." *United States v. Marshank*, 777 F. Supp. 1507, 1519 (N.D. Cal. 1991). The defendant must be prejudiced in order for prosecutorial misconduct to reach the level of a due process violation. *United States v. Irwin*, 612 F.2d 1182, 1187 (9th Cir. 1980).

In *United States v. Marshank*, the defendant's attorney collaborated with the government to secure enough information to indict the defendant for narcotics

6

offenses. The court found this constituted misconduct on the part of the government because Marshank only became a prospective target of the criminal investigation based on the confidential information provided to the government by Marshank's attorney. *Marshank*, 777 F. Supp. at 1519. The government used the attorney-client relationship to develop a case against Marshank. *Id.*

Here, the government similarly used information that was privileged by the attorney-client relationship to build a case against Defendant Schlegel. The information Holm provided to IRS Agent Zych is exactly what triggered the criminal investigation, as evidenced by her internal memoranda and notes to the file. Before receiving the privileged information, the IRS did not have sufficient support even for a referral to the CID, let alone an indictment. Like the defendant in *Marshank*, Schlegel only became a target of a criminal investigation based on the information obtained from Holm. Further, the IRS knew the information was privileged. During Agent Zych's conversations with CPA Holm, he noted among other concerns that the information was privileged, that he thought he had overstepped his boundaries, and that after reading up on privacy issues he was afraid he could be sued for talking too freely. Notwithstanding its knowledge that the communications were privileged, the Government continued to press Holm and used Holm's knowledge and files to build a case against Mr. Schlegel.

### B. The Government's Misconduct Substantially Prejudiced Defendant Schlegel.

Interference with the attorney-client relationship is not enough, in and of itself, to constitute a due process violation. *Irwin*, 612 F.2d at 1187. The right to due process is violated only "when the intrusion substantially prejudices the defendant." *Id.* The court in *Marshank* concluded that Marshank was prejudiced because there would not have been any indictments against him absent the interference with the attorney-client relationship. *Marshank*, 777 F. Supp. at 1521. Likewise, there would not have been an indictment against Defendant Schlegel had there not been an interference with his attorney-client relationship. Indeed, there would have been no criminal investigation at all because IRS Agent Zych only referred the case based on the privileged information provided by Holm. As held in *Marshank*, this establishes prejudice.

Likewise, in *United States v. Schell*, 775 F.2d 559 (4th Cir. 1985) the court found "fundamental prejudice" where the attorney turned on the client and aided in the prosecution. The court stated:

> The relationship between an attorney and his client is a sacred one. In that relationship, the client must be secure in the knowledge that any information he reveals to counsel will remain confidential. The confidentiality of the attorney-client relationship is severely compromised, if not destroyed, when, after representing a client, a lawyer joins in the criminal prosecution of that client *with respect to the identical matter about which the attorney originally counseled the client*. Such switching of sides is fundamentally unfair and inherently prejudicial. Without question, the client's right to a fair trial, secured

8

by the due process clauses of the fifth and fourteenth amendments, is compromised under these circumstances.

*Id.* at 565.  Just as in *Schell*, Holm here turned and aided in the prosecution of Defendant using information gleaned from the attorney-client relationship.  Holm's decision to "switch sides" was fundamentally unfair to Defendant, prejudicing his Fifth Amendment right to a fair proceeding.

    **C.**    **The Appropriate Remedy for the Fifth Amendment Violation is Dismissal of the Indictment.**

After establishing a Fifth Amendment violation has occurred, the court must determine the appropriate remedy. In making this determination, the court must tailor the remedy to the injury. *United States v. Rogers*, 751 F.2d 1074, 1078 (9th Cir. 1985). The appropriate remedy for a Fifth Amendment violation is generally suppression of the evidence. *Id.* Suppression is an appropriate remedy where the court can identify and isolate the evidence obtained in violation of the defendant's Fifth Amendment Due Process rights. *Marshank*, 777 F. Supp. at 1522 (*citing Rogers*, 751 F.2d at 1078). The prosecution is thus denied "the fruits of its transgression" and the due process right to a fair trial is preserved. *Id.* Dismissal of the indictment, on the other hand, is the appropriate remedy where there would be continuing prejudice from the constitutional violation that cannot be remedied by suppression of the evidence. *Rogers*, 751 F.2d at 1078; *see also*, *United States v. Rozin*, 552 F. Supp. 2d 693, 699 (S.D. Ohio 2008).  The power to dismiss an

9

indictment on due process grounds on the basis of prosecutorial misconduct should be exercised sparingly. *United States v. Busher*, 817 F.2d 1409, 1411 (9th Cir. 1987). "Sparing use, of course, does not mean no use. Even 'disfavored remedies' must be used in certain situations." *United States v. Omni Int'l Corp.*, 634 F. Supp. 1414, 1438 (D. Md. 1986) (citation omitted).

In *Marshank*, the Court found that the "fruit of the prosecutor's transgression" was the indictment itself because the indictment arose as a result of the disclosure of privileged information. *Marshank*, 777 F. Supp. at 1522. The court went on to say, "In such a situation, it is simply impossible to excise the taint of the government's constitutional transgressions from the prosecution of the defendant. The taint of the government's transgressions spreads to all the evidence obtained against [defendant]." *Id.*

Suppression of evidence alone is not a sufficient remedy in this case because the entire criminal investigation began as a result of Holm's disclosures, and there was insufficient evidence to refer the case to CID without Holm's assistance and without the privileged materials he provided. If suppression of evidence were the appropriate remedy, then all evidence considered "fruit" of the privileged materials would have to be suppressed. But the indictment itself is the fruit of the breach of the attorney-client privilege, both because it would not have been sought in the first place without the privileged material, and because the substance of the

10

allegations derives directly from that material. The allegations in counts 2-4 of the indictment, for example, are near verbatim to the concerns expressed by Holm to Ertl in the privileged letter of March 2005. The only appropriate remedy is dismissal of the indictment.

## II. A *KASTIGAR* HEARING IS REQUIRED IF THE COURT PERMITS THE CASE TO PROCEED.

If the Court were to conclude that dismissal is not required, in spite of the Government's use of privileged evidence to build its case, then a hearing, pursuant to *Kastigar v. United States,* 406 U.S. 441, 461–62, (1972), is nonetheless required to permit the Government to attempt to "demonstrate that the evidence it uses to prosecute an individual was derived from legitimate, independent sources." *United States v. Schwimmer*, 924 F.2d 443, 446 (2d Cir. 1991) (Schwimmer II).

In the instant case, it no longer can be doubted "whether the government's case was in any respect derived from a violation of the attorney-client privilege in regard to confidential communications." *United States v. Schwimmer*, 892 F.2d 237, 245 (1989) (Schwimmer I). That much already has been established. The burden therefore shifts to the Government to "show[] that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence." *Kastigar*, 406 U.S. at 460 (*quoting Murphy v. Waterfront Comm'n,* 378 U.S. 52, 79 n.18 (1964)).

In this Circuit, moreover, the Government's burden is not limited to an

affirmative demonstration of independent, legitimate sources for its evidence; the Eighth Circuit also requires that the Government carry the burden of proving that the prosecution did not use the privileged evidence "in some significant way" short of introducing it: "Such use could conceivably include assistance in focusing the investigation, deciding to initiate prosecution, refusing to plea-bargain, interpreting evidence, planning cross-examination, and otherwise generally planning trial strategy." *United States v. McDaniel*, 482 F2d 305, 311 (8th Cir. 1973).  While conceding that McDaniel has been criticized as requiring too much in other circuits, *see, e.g., Schwimmer II*, 924 F.2d at 446 (mere tangential influence on prosecutor's thought process not prohibited), it never has been over-ruled and remains the law in this Circuit.

Of course, in the context of this case, it is clear that the privileged attorney-client confidences were not merely tangentially influential.  In this case, there would have been no criminal investigation in the first place without the information supplied by Holm.  And there certainly would have been no indictment that prominently featured Holm in a starring role both in the introductory allegations and in the "manner and means" allegations.  *See* Indictment at 4, 6.  If the Court permits the case to proceed, therefore, it must first require the Government to carry the burden of proving independent, un-tainted sources for its evidence and for its decision to bring this prosecution in the first place.

## CONCLUSION

For the foregoing reasons, Defendant Michael Andrew Schlegel respectfully requests that the Court dismiss the indictment, or in the alternative, that it conduct a *Kastigar* hearing.

Dated: 19 February 2014                             Respectfully submitted,

DANIEL L. GERDTS, LAWYER

s/ *Daniel L. Gerdts*
Daniel L. Gerdts (#207329)
247 Third Avenue South
Minneapolis, Minnesota 55415
(763) 432-5855


DANIEL P. BREES, LAWYER

s/ Daniel P. Brees
Daniel P. Brees (#395284)
247 Third Avenue South
Minneapolis, Minnesota 55415
(612) 547-9153


ATTORNEYS FOR DEFENDANT