UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,                    Case No. 13-CR-0074(1) (PJS/FLN)

                    Plaintiff,
                                                          ORDER

v.

MICHAEL ANDREW SCHLEGEL,

                    Defendant.

John E. Kokkinen and Tracy L. Perzel, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Daniel L. Gerdts and Daniel Patrick Brees, for defendant.

For many years, defendant Michael Schlegel refused to file tax returns and obstructed the attempts of the Internal Revenue Service ("IRS") to audit him and his wife.  Moreover, Schlegel and his codefendant (Bradley Collin) used various means—including sham trusts, sham companies, and warehouse-banking services—to hide income that they had received from various enterprises in which they were involved, including a company that was first known as The Master's Miracle, Inc., and then known as NatureRich, Inc. ("TMM/NR").  A jury convicted Schlegel of conspiring to

defraud the government, 18 U.S.C. § 371; attempting to evade or defeat taxes, 26 U.S.C. § 7201; and willfully failing to file tax returns, 26 U.S.C. § 7203.[1]

This matter is before the Court on Schlegel's objections to the Presentence Investigation Report ("PSR"). The bulk of those objections concern the "tax loss" calculated under the United States Sentencing Guidelines.[2] The Court conducted evidentiary hearings regarding Schlegel's objections on January 6 and 23, 2015.

## I. TAX LOSS

Because Schlegel's offense "involved tax evasion," the "tax loss is the total amount of loss that was the object of the offense (*i.e.*, the loss that would have resulted had the offense been successfully completed)." U.S.S.G. § 2T1.1(c)(1). For any year in which Schlegel did not file a tax return, "the tax loss is the amount of tax that the taxpayer owed and did not pay." U.S.S.G. § 2T1.1(c)(2). "In determining the total tax loss attributable to the offense . . . , all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan unless the evidence demonstrates that the conduct is clearly unrelated." U.S.S.G. § 2T1.1 cmt. n.2. If the amount of tax loss is uncertain based on the available evidence, "the guidelines

---

[1]Collin pleaded guilty to conspiring to defraud the government and was sentenced to 24 months in prison. ECF No. 140.

[2]The Court notes that the PSR was prepared using the 2013 version of the Guidelines Manual. PSR ¶ 23. The 2014 version is now in effect. *See* U.S.S.G. § 1B1.11. The Court has compared the relevant provisions and has not found any differences.

contemplate that the court will simply make a reasonable estimate based on the available facts."  U.S.S.G. § 2T1.1 cmt. n.1.

Applying these principles, the PSR calculated a total tax loss of $1,434,899.56. PSR ¶¶ 17-18.  Because that tax loss fell between $1,000,000 and $2,500,000, the PSR found that Schlegel's base offense level was 22.  U.S.S.G. § 2T4.1(I).  Schlegel raises a number of objections to the PSR's calculation of the tax loss.  For purposes of discussion, the Court will address the tax years included in the tax-loss calculation in four groups:  (1) 1994 to 1997, (2) 2003, (3) 2004 to 2005, and (4) 2006 to 2008.

### A. 1994-1997

### 1.  Interest and Penalties

In calculating a total tax loss of $636,206.28 for the years 1994 to 1997, the PSR included not only the taxes that Schlegel failed to pay, but also the interest and penalties that had been assessed by the IRS.  PSR ¶ 18, addendum at A.2.  Schlegel objects that interest and penalties should not be included in calculating the tax loss for those years. The Court agrees.

The general rule is that "tax loss does not include interest or penalties."  U.S.S.G. § 2T1.1 cmt. n.1; *see also United States v. Thomas*, 635 F.3d 13, 16 (1st Cir. 2011); *United States v. Hunerlach*, 197 F.3d 1059, 1069-70 (11th Cir. 1999); *United States v. Hopper*, 177 F.3d 824, 832 (9th Cir. 1999).  The guidelines commentary was amended in 2001 to add a

narrow exception to this general rule for "willful evasion of payment cases under 26

U.S.C. § 7201 and willful failure to pay cases under 26 U.S.C. § 7203." U.S.S.G. app. C,

amend. 617 (amending § 2T1.1 cmt. n.1); *see also United States v. Barker*, 556 F.3d 682, 686

(8th Cir. 2009). The Sentencing Commission explained this exception as follows:

> In evasion-of-payment tax cases, the Commission amended
> the definition of "tax loss" to include interest and penalties
> because, in contrast to evasion-of-assessment tax cases, such
> amounts appropriately are included in tax loss for such
> cases. This amendment limits the inclusion of interest or
> penalties to willful evasion of payment cases under 26 U.S.C.
> § 7201 and willful failure to pay cases under 26 U.S.C. §
> 7203. The nature of these cases is such that the interest and
> penalties often greatly exceed the assessed tax amount
> constituting the bulk of the harm associated with these
> offenses.

U.S.S.G. app. C, amend. 617.

Schlegel's case does not fall within this exception. As the Sentencing

Commission's explanation reflects, § 7201 includes two distinct offenses: (1) evading

the *assessment* of taxes and (2) evading the *payment* of taxes that have been assessed.

Likewise, § 7203 contains several distinct offenses, including (1) failing to file a tax

return and (2) failing to pay a tax. *See* 26 U.S.C. §§ 7201, 7203; *United States v.*

*McLaughlin*, 126 F.3d 130, 136 (3d Cir. 1997) (citing *Sansone v. United States*, 380 U.S. 343,

354 (1965)), *abrogated on other grounds as recognized in United States v. Shavers*, 693 F.3d

363 (3d Cir. 2012); *United States v. Hogan*, 861 F.2d 312, 315 (1st Cir. 1988) (citing

*Sansone*); *United States v. Dack*, 747 F.2d 1172, 1174 (7th Cir. 1984) (citing *Sansone*).

The exception to the general rule that tax loss does not include interest or

penalties applies only in "willful evasion of payment cases under 26 U.S.C. § 7201 and

willful failure to pay cases under 26 U.S.C. § 7203." § 2T1.1 cmt. n.1.  But Schlegel was

not convicted of *any* offense under § 7201 or § 7203 with respect to the years 1994 to

1997—and, even with respect to the years 2006 to 2008, he was not convicted of evading

the payment of taxes under § 7201 or of failing to pay taxes under § 7203.  *See* ECF No. 1

at 11-12 (indictment); ECF No. 114 at 1-2 (verdict).  Moreover, this is not a case in which

"interest and penalties . . . greatly exceed the assessed tax amount" and thus

"constitut[e] the bulk of the harm associated with these offenses."  U.S.S.G. app. C,

amend. 617.  To the contrary, the taxes for the relevant years ($369,915.00) exceed the

interest and penalties ($266,291.28).  Def.'s Ex. 1;[3] ECF No. 144 Ex. 1 (Gov.'s Trial Ex.

120).

In arguing that Schlegel's tax loss for the period 1994 to 1997 should include

interest and penalties, the government relies on two out-of-circuit cases (one

unpublished):  *United States v. Lombardo*, 582 F. App'x 601 (6th Cir. 2014), and *United*

*States v. Thomas*, 635 F.3d 13 (1st Cir. 2011).  But both of those cases—unlike this

---

[3]Unless otherwise indicated, citations to the parties' exhibits refer to the exhibits
submitted at the evidentiary hearings held on January 6 and 23, 2015.

case—were "willful evasion of payment cases under 26 U.S.C. § 7201," and thus fell

squarely within the exception provided in the Sentencing Guidelines.  *See* Superseding

Indictment, *United States v. Barkus*, No. 1:09-cr-00386-PAG, ECF No. 5 (N.D. Ohio Sept.

29, 2009) (Counts 7 and 8 charging that defendants Barkus and Lombardo "did willfully

attempt to evade and defeat the payment of income taxes"); Indictment, *United States v.*

*Thomas*, No. 1:06-cr-00004-JAW, ECF No. 1 (D. Me. Jan. 11, 2006) (Counts 1 and 2

charging that defendant "willfully attempted to evade and defeat the payment of" tax

due).  The other case on which the government relies—*United States v. Mathis*, 980 F.2d

496 (8th Cir. 1992)—involved a defendant who had stipulated to the tax-loss amount for

purposes of sentencing, and thus *Mathis* does not support the government's position.

For these reasons, the Court sustains Schlegel's objection and holds that interest

and penalties should not be included in calculating the tax loss for the years 1994 to

1997.

### 2.  STS Commissions

Schlegel objects that the tax loss calculated for the years 1994 to 1997 is inflated

for a second reason.  The IRS audited Schlegel and his wife for the years 1994 to 1997.

During this period, Schlegel and his wife received commissions from a company known

as Strategic Telecom Systems ("STS").  At the beginning of the audit process, the IRS

attributed 50 percent of the total income received from STS to Schlegel and 50 percent to

his wife, as the IRS was not able to determine precisely how much each Schlegel had earned from STS.  Later, though, after the Schlegels refused to provide evidence as to who had earned what, the IRS attributed 100 percent of the STS income to Schlegel and 100 percent to his wife.  Gov.'s Ex. M.  Schlegel's refusal to provide information about the STS commissions was of a piece with his "uncooperative and obstructive" conduct during the IRS audit—conduct that included "inundat[ing] the IRS with frivolous filings" and "return[ing] mail from the IRS stamped with 'RETURNED FOR GOOD LEGAL REASON.'"  PSR ¶ 7.

Schlegel argues that, in calculating the tax loss for 1994 to 1997, only 50 percent of the STS commissions should be attributed to him.  Schlegel's argument is meritless.  Schlegel's tax loss is governed by U.S.S.G. § 2T1.1.  Under that guideline, the tax loss is "the total amount of loss that was the object of the offense," and "all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan unless the evidence demonstrates that the conduct is clearly unrelated." § 2T1.1(c)(1), cmt. n.2.

In *United States v. Aldridge*, 561 F.3d 759 (8th Cir. 2009), the Eighth Circuit rejected the argument that "the district court improperly calculated the guidelines range by including third-party tax losses in calculating the base offense level . . . under § 2T1.1." 561 F.3d at 766-67.  The Aldridges (James and Shirley) had employed a scheme that

funneled their money through trusts in order to claim—unlawfully—deductions for personal expenses. *Id.* at 762, 767. The Aldridges advised others to do the same. *Id.* In James Aldridge's appeal, the Eighth Circuit concluded that the tax loss attributed to him included not only his own unlawful deductions but the unlawful deductions taken by others on his advice. *Id.* at 766-67. Aldridge "caused the third-party tax losses," and his "advice to third-parties" was "part of a related 'common scheme or plan.'" *Id.*

In the same way, Schlegel caused the loss of uncollected taxes on the STS commissions received by his wife through his obstruction of the IRS audit—which obstruction, of course, was part of his overall scheme to evade income taxes. The PSR thus correctly attributed all of the STS commissions to Schlegel in calculating his tax loss. For these reasons, the Court denies Schlegel's objection regarding the STS income.

In sum, the Court finds that the total tax loss for 1994 through 1997 is $369,915.00— which includes the full amount of taxes owed on the income of Schlegel and his wife, but does not include the interest and penalties assessed by the IRS. Def.'s Ex. 1; ECF No. 144 Ex. 1.

### B.  2003

The parties stipulated at the hearing that the tax loss for 2003 was $47,566.00. *See also* Gov.'s Ex. B at 2 (Schlegel's 2003 tax return, calculating taxes owed as

$47,566.00, not counting penalties).  The Court accepts this stipulation and accordingly

finds that the tax loss for 2003 is $47,566.00.

### C.  2004-2005

### 1. "S Corporation" Election

The PSR calculated a total tax loss of $604,902.28 for 2004 and 2005.  PSR ¶ 18.

Schlegel objects that the PSR failed to take into account the tax benefits that he could

have enjoyed if TMM/NR had been classified as an S corporation.  TMM/NR was not

classified as an S corporation—and, to this day, TMM/NR has not been classified as an

S corporation—but Schlegel argues that TMM/NR *could* have been classified as an

S corporation, and, if it had been so classified, the large losses that the company

incurred could have been passed through to him, and he could have used those losses

to offset much of his taxable income.  *See generally* 26 U.S.C. § 1361 (defining

"S corporation").

The commentary to U.S.S.G. § 2T1.1 provides:

> In determining the tax loss, . . . the court should account for
> any unclaimed credit, deduction, or exemption that is
> needed to ensure a reasonable estimate of the tax loss, but
> only to the extent that . . . the credit, deduction, or exemption
> was related to the tax offense and could have been claimed
> at the time the tax offense was committed [among other
> restrictions].

U.S.S.G. § 2T1.1 cmt. n.3.  The defendant bears the burden of showing his eligibility for the unclaimed benefit.  *Id.*

In support of his argument that TMM/NR could have been classified as an S corporation, Schlegel cites evidence that TMM/NR consulted accountants and explored S-corporation status.  The government counters that TMM/NR was not eligible to be classified as an S corporation because it was owned in part by "Red Maple LLC," and S corporations cannot "have as a shareholder a person . . . who is not an individual."  26 U.S.C. § 1361(b)(1)(B).  Schlegel responds that, according to the prosecution's theory of the case, Red Maple was a sham that was created solely to further his fraudulent scheme.  Because Red Maple did not really exist—that is, because Red Maple was just an alter ego of Schlegel and Collin—all of the "real" shareholders of TMM/NR were, in fact, human beings.

The Court does not need to address the merits of these arguments, because it is clear that TMM/NR could not have elected to become an S corporation—and thus its losses could not have been passed through to Schlegel—for a separate reason: Form 2553 (the form that an entity must file to elect classification as an S corporation) requires that every shareholder consent to the S-corporation election.  TMM/NR's accountants prepared a Form 2553 for tax year 2003, but the form was not filed.  Def.'s Ex. 5.  Written on the Form 2553 was a note reporting that the form was "not filed due

to lack of minority shareholder consent."  Def.'s Ex. 5 at GTHORNTON_00000742.  An

appended email confirms that the "[m]inority shareholders did not sign.  We will

pursue next year."  *Id.* at GTHORNTON_00000746.  Schlegel offers no evidence that

TMM/NR's shareholders ever agreed or could have been persuaded to agree to seek

S-corporation status.

Again, it is Schlegel's burden to prove that a tax benefit "could have been

claimed at the time the tax offense was committed."  U.S.S.G. § 2T1.1 cmt. n.3.  Schlegel

has not met his burden, as he has failed to prove that TMM/NR could, in fact, have

elected S-corporation status and therefore that he could, in fact, have used TMM/NR's

losses to reduce his personal tax liability.  Schlegel's objection is accordingly overruled.[4]

The Court notes that Schlegel presented evidence that he has recently been trying

to persuade the IRS to retroactively reclassify TMM/NR as an S corporation with the

help of Mary Petersdorf, a tax preparer.  But the retroactive-election procedure that

Schlegel is attempting to use—a procedure that is set forth in Rev. Proc. 2013-30, 2013-

36 I.R.B. 173—is plainly intended for use by an entity that was not classified as an

S corporation "solely because the [election] was not timely filed by the Due Date."

*Id.* § 4.02(3).  To succeed, the entity must establish "reasonable cause for its failure to

---

[4]Schlegel asserts that "the guidelines only require that [the benefit] was *available*
to the taxpayer at the time the taxpayer chose *instead* to commit the tax offense."  ECF
No. 164 at 10.  That is not what the Sentencing Guidelines say, and Schlegel has cited no
authority supporting his unusual interpretation.

make the timely [election]" and that it "acted diligently to correct the mistake upon its

discovery." *Id.* § 4.02(4).  The retroactive-reclassification procedure also appears to

reach back only three years and 75 days, though Petersdorf testified she has been

successful in persuading the IRS to go back as far as five or six years.  *Id.* § 4.02(2).

Schlegel's attempt to have TMM/NR retroactively reclassified as an S corporation

is doomed to fail.  The procedure that he is using is plainly intended for "mistake[s],"

and there is no evidence that TMM/NR made a "mistake" in failing to seek classification

as an S corporation.  To the contrary, the evidence in the record suggests that TMM/NR

did not seek S-corporation status because not all of its shareholders consented.

Moreover, there is no evidence that the IRS has ever allowed a reclassification to stretch

back as far as the reclassification sought by Schlegel.  Schlegel's own tax preparer

(Petersdorf) conceded that there was a "99.9%" chance that the request would be

denied.  In short, the fact that Schlegel is seeking to have TMM/NR retroactively

reclassified as an S corporation does nothing to help him meet his burden to establish

that the relevant tax benefits "could have been claimed at the time the tax offense was

committed."  U.S.S.G. § 2T1.1 cmt. n.3.

## 2.  Collin's Income

The PSR attributes to Schlegel all of the income generated in 2004 and 2005 by

various enterprises operated by both Schlegel and Collin.  Schlegel objects that only half

of that income should be attributed to him, as "the two men attempted to split the

proceeds more or less equally."  ECF No. 142 at 6.

The law is clear, however, that Schlegel is responsible for "all reasonably

foreseeable acts and omissions of others in furtherance of the jointly undertaken

criminal activity."  U.S.S.G. § 1B1.3(a)(1)(B).  This includes reasonably foreseeable tax

loss caused by coconspirators.  *United States v. Jinwright*, 683 F.3d 471, 484-85 (4th Cir.

2012); *United States v. Thompson*, 518 F.3d 832, 867 (10th Cir.  2008); *United States v.*

*Firment*, 296 F.3d 118, 121-22 (2d Cir.  2002); *United States v. Oestreich*, 286 F.3d 1026,

1030 (7th Cir.  2002); *United States v. Charroux*, 3 F.3d 827, 838 (5th Cir.  1993).

Based on the evidence at trial, Schlegel undoubtedly knew that taxes would not

be paid on whatever money Collin took for himself.  After all, the overarching purpose

of their conspiracy was to avoid the income taxes that both men were obligated to pay.

Schlegel's objection is overruled.

### 3.  Tax Rate

Schlegel next objects to the PSR's use of a 25% tax rate on his income to calculate

the tax loss for 2004 and 2005.  PSR ¶ 17.  He points to U.S.S.G. § 2T1.1(c)(2)(A), which

provides:  "If the offense involved failure to file a tax return, the tax loss shall be treated

as equal to 20% of gross income . . . unless a more accurate determination of the tax loss

can be made."

As the guidelines commentary makes clear, the 20% rate is only a "presumption[]" that applies when a more accurate rate cannot be determined.  U.S.S.G. § 2T1.1 cmt. n.1.  At the evidentiary hearing, IRS Special Agent Timothy Nichols credibly testified that the 25% rate was, in fact, an underestimation of what Schlegel's effective tax rate would have been in 2004 and 2005 had Schlegel properly filed tax returns.  Schlegel's own expert witness—forensic accountant and former IRS agent Paul Walsh—agreed that the 25% rate was "conservative."  Because the evidence in the record establishes that the 25% rate applied by the PSR is more accurate than the presumptive 20% rate suggested by the guidelines, Schlegel's objection is overruled.

For these reasons, the Court finds that the PSR correctly calculated the total tax loss for the years 2004 and 2005 as $604,902.28.

### D.  2006-2008

At the hearing, Schlegel submitted the tax returns he has (very tardily) filed for 2006, 2007, and 2008.  The returns calculated tax liabilities (excluding penalties) of $23,286.00 for 2006, Def.'s Ex. 6 at 2; $56,273.00 for 2007, Def.'s Ex. 7 at 2; and $16,889.00 for 2008, Def.'s Ex. 8 at 2.  The government gave no reason to doubt that these are the most accurate figures.  Accordingly, the Court finds that the total tax loss for the period 2006 to 2008 is $96,448.00.

*E.  Total Tax Loss*

In light of its rulings on Schlegel's objections to the PSR's calculation of tax loss, the Court finds that the total tax loss attributable to Schlegel is $1,118,831.28, which corresponds to a base offense level of 22.  U.S.S.G. § 2T4.1(I).

## II.  ADJUSTMENT FOR ROLE IN THE OFFENSE

Schlegel also objects to the PSR's application of a two-level upward adjustment to his offense level for his purported role as "an organizer or leader" under U.S.S.G. § 3B1.1(c).  PSR ¶ 29.  Although the question is close, the Court agrees with Schlegel that the enhancement should not apply.

Based on the evidence at trial, the Court would characterize the relationship between Schlegel and Collin as a partnership, with both men actively carrying out the unlawful activities of that partnership.  Schlegel could fairly be characterized as the dominant partner—he seemed to be the smarter and more energetic of the two partners—but it would be a stretch to say that he "organized" or "led" Collin.  The two men worked closely together, and each man let the other take the lead at times.  The Court does not believe that the aggravating-role enhancement was meant to apply to this type of partnership.  *See United States v. Rowley*, 975 F.2d 1357, 1364 (8th Cir. 1992) ("Being part of a conspiracy does not imply that one is an organizer, leader, manager, or supervisor in the criminal activity."); *see also United States v. Ronning*, 47 F.3d 710, 713

(5th Cir. 1995) (" . . . [A] review of the record reveals constant references to Wimple and Ronning as partners.  The mere fact that Ronning had more contact with clients than Wimple does not show that he had control or influence over Wimple.  . . .  Even under our clearly erroneous standard of review, we conclude that the record read as a whole does not render plausible a finding that Ronning organized or led Wimple."); *United States v. Katora*, 981 F.2d 1398, 1402-03 (3d Cir. 1992) ("The district court's findings that Katora and Squire shared responsibility for creating and carrying out the fraud do not indicate that either Katora or Squire organized the other.  . . .  Just as section 3B1.1 cannot enhance the sentence of a solo offender, neither can it enhance the sentences of a duo when they bear equal responsibility for 'organizing' their own commission of a crime." (citation omitted)).

The Court therefore sustains Schlegel's objection to the application of the two-level enhancement under U.S.S.G. § 3B1.1(c).

## III.  RESTITUTION

As noted, Schlegel was convicted of conspiring to defraud the government in violation of 18 U.S.C. § 371 and of various tax offenses under the Internal Revenue Code.  Neither the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A, nor the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663, applies to convictions under the Internal Revenue Code.  *See* 18 U.S.C. §§ 3663(a)(1)(A),

3663A(c)(1).[5]  The parties dispute, however, whether either the MVRA or the VWPA

applies to the conspiracy conviction.

The PSR concluded that the MVRA did not apply to the conspiracy conviction,

but that restitution was "permissible" under the VWPA.  PSR ¶ 20.  The PSR is

incorrect.  As the government points out, a substantial body of case law holds that the

MVRA does indeed apply to conspiracy convictions under 18 U.S.C. § 371.[6]  And

because the MVRA applies to Schlegel's conspiracy conviction, the VWPA does not

apply.  *See* 18 U.S.C. § 3663(a)(1)(A); *see also United States v. McNair*, 605 F.3d 1152, 1221

& n.107 (11th Cir. 2010); *United States v. Quarrell*, 310 F.3d 664, 677-78 (10th Cir. 2002).

---

[5]The government's argument that the VWPA applies to Schlegel's convictions under 26 U.S.C. §§ 7201 and 7203 is plainly incorrect.  The VWPA applies, by its terms, to offenses under Title 18 and certain sections of Titles 21 and 49.  18 U.S.C. § 3663(a)(1)(A).  The VWPA does not apply to tax offenses under Title 26.  *See United States v. Perry*, 714 F.3d 570, 577 (8th Cir. 2013); *United States v. Anderson*, 545 F.3d 1072, 1077 (D.C. Cir. 2008); *United States v. Butler*, 297 F.3d 505, 518 (6th Cir. 2002); *United States v. Minneman*, 143 F.3d 274, 284 (7th Cir. 1998); *United States v. Gottesman*, 122 F.3d 150, 151 (2d Cir. 1997).

[6]*See, e.g., United States v. Turner*, 718 F.3d 226, 235-36 (3d Cir. 2013) (" . . . [W]e conclude that Turner's conspiracy to defraud the IRS of its *property*, [his codefendant's] tax dollars, in violation of 18 U.S.C. § 371, is an 'offense against property under this title [title 18],' and consequently covered by the MVRA."); *United States v. Meredith*, 685 F.3d 814, 827 (9th Cir. 2012) ("Meredith is correct that the MVRA does not apply to Title 26 income tax offenses, but it *does* apply [to] Section 371 conspiracy offenses."); *see also United States v. Senty-Haugen*, 449 F.3d 862, 865-66 (8th Cir. 2006) (holding that IRS is a "victim" for MVRA purposes and that restitution was properly ordered where defendant was convicted of conspiring to defraud the government and filing false tax claims under 18 U.S.C. §§ 2, 286, 287).

That is not the end of the matter, however.  Even when the MVRA does apply,

restitution is not mandatory when "determining complex issues of fact related to the

cause or amount of the victim's losses would complicate or prolong the sentencing

process to a degree that the need to provide restitution to any victim is outweighed by

the burden on the sentencing process."  18 U.S.C. § 3663A(c)(3)(B).  The Eighth Circuit

has instructed that, under this provision of the MVRA, "a burdensome, complicated, or

speculative calculation provides a good reason for the district court to decline to

exercise its discretion" in ordering restitution.  *United States v. Martinez*, 690 F.3d 1083,

1089 (8th Cir. 2012) (quoting *United States v. Oslund*, 453 F.3d 1048, 1063 (8th Cir. 2006)).

The PSR determined the restitution amount to be $1,168,608.28, which the PSR

described as "the princip[al] loss of the defendant's taxes owed before imposition of

interest and penalties."  PSR ¶ 20.[7]  The PSR warned, though, that this calculation was

provisional, as "[t]he defendant may be presently working with the IRS to file or re-file

---

[7]Schlegel objects to this figure as "not accurate."  ECF No. 142 at 10-11.  Schlegel also argues that restitution should not be ordered at all since the IRS is a government agency that has its own system of debt collection.  The single opinion he relies on for this proposition—*United States v. Ture*, 450 F.3d 352 (8th Cir. 2006)—merely observed that the district court in that case "did not order restitution [for the defendant's conviction under 26 U.S.C. § 7201] because the Internal Revenue Service would pursue collection of outstanding taxes, interest, and penalties."  *Id.* at 355.  The district court's decision not to order restitution was not challenged or otherwise discussed on appeal. Moreover, Schlegel was convicted not only of offenses under 26 U.S.C. §§ 7201 and 7203, but also of conspiring to defraud the government under 18 U.S.C. § 371—a meaningful distinction, as discussed above.

income tax returns for multiple tax years for which he failed to file or provide complete information, and the restitution amount may be adjusted upon completion of that process." *Id.* At the evidentiary hearing, Schlegel's tax preparer testified that Schlegel is actively working with her and with the IRS to file returns for all the years in question and reach a final determination of what amount of money he will owe.

Given that the IRS and Schlegel are currently attempting to determine how much he owes in taxes—and given that it would be extremely "burdensome, complicated, [and] speculative" for the Court to attempt to do that accounting work itself—the Court declines to order restitution under 18 U.S.C. § 3663A(c)(3)(B). The Court will, however, order Schlegel to pay his back taxes, interest, and penalties as a condition of his supervised release. *See United Stated v. Perry*, 714 F.3d 570, 577 (8th Cir. 2013) ("[A]s many circuits have noted, Congress has explicitly granted district courts discretionary authority to 'make restitution to a victim of the offense' a condition of supervised release, without regard to whether the defendant committed an offense enumerated in §§ 3663(a)(1)(A) or 3663A(c)(1).").

## IV.  MISCELLANEOUS FACTUAL OBJECTIONS

Schlegel also objects to a number of the factual assertions in the PSR regarding, among other things, the precise timing of his use of warehouse-banking services and the nature of the grand-jury testimony given by Collin. ECF No. 142 at 4-6. A ruling on

these objections is not necessary under Fed. R. Crim. P. 32(i)(3)(B) because these

assertions will not affect sentencing.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED that:

1.      Schlegel's objection to the inclusion of interest and penalties in the PSR's

tax-loss calculation for tax years 1994 through 1997 is SUSTAINED.

2.      Schlegel's objection to the inclusion of taxes owed on all of the STS

commission income for tax years 1994 through 1997 is OVERRULED.

3.      Schlegel's objection to the PSR not taking into account the tax benefits he

could have enjoyed if TMM/NR had been classified as an S corporation

during tax years 2004 through 2005 is OVERRULED.

4.      Schlegel's objection to the inclusion of taxes owed on income attributable

to Collin for tax years 2004 through 2005 is OVERRULED.

5.      Schlegel's objection to the application of a 25% tax rate for tax years 2004

through 2005 is OVERRULED.

6.      The Court finds, by a preponderance of the evidence, that the total tax loss

in this case is $1,118,831.28, which yields a base offense level of 22.

-20-

7.      Schlegel's objection to the upward adjustment for an aggravating role in

the offense is SUSTAINED.

8.      Schlegel's objection to the recommended restitution amount is

SUSTAINED.

9.      Pursuant to Fed. R. Crim. P. 32(i)(3)(B), the Court determines that a ruling

is unnecessary on Schlegel's objections to the factual assertions contained

in paragraphs 10-12 and 14-15 of the PSR.


Dated:  March 13, 2015                       s/Patrick J. Schiltz
                                            Patrick J. Schiltz
                                            United States District Judge